21891

In the Matter of Ben Randolph KING, Respondent.
(301 S. E. (2d) 752)

*Atty. Gen. T. Travis Medlock, Retired Atty. Gen. Daniel R. McLeod* and *Asst. Atty. Gen. C. Havird Jones, Jr.*, Columbia, *for complainant.*

*Ben Randolph King*, Charleston, *pro se.*

March 29, 1983.

*Per Curiam:*

In this attorney disciplinary proceeding, the Hearing Panel and the Executive Committee of the Board of Commissioners on Grievances and Discipline found Respondent, Ben Randolph King, guilty of professional misconduct and made independent recommendations that he be publicly reprimanded. We agree with the findings of fact and conclusions of law determining professional misconduct, but we are of the opinion that the facts recited hereinbelow necessitate a more severe sanction.

This proceeding involves two unrelated matters in which respondent is guilty of professional misconduct.

### The Bermingham Matter

Respondent's clients, Mr. and Mrs. Bermingham, contracted in March, 1978, for Claude Barnes to construct a house for them on Kiawah Island. Apparently, the house was not finished timely and had some defects. In February 1979, they contracted to sell the house to a Mr. Hoyt. On the eve of the closing, Barnes filed against the Berminghams and the house a Mechanic's Lien, Lis Pendens, and Petition to Foreclose on the lien.

To effect the closing, $3,500.00 was placed in escrow to cover the cost of repairs to the house. Another escrow account in the amount of $4,117.57 was created pending resolution of the Petition to Foreclose on the Mechanic's Lien.

The closing involved a $22,000.00 purchase money note and mortgage payable within ninety days by Hoyt. After the ninety days, the note was paid. The mortgage had been inadvertently kept by Hoyt's attorney, Mr. Chapman. Chapman thereafter mailed the mortgage to Respondent to have the satisfaction of mortgage executed by the Berminghams who had moved to Florida after the closing. Mr. Bermingham told Respondent he would not execute the satisfaction of the mortgage until he received an accounting of repairs done to the house. No accounting was provided and satisfaction of mortgage was not executed.

In the fall of 1980, Hoyt informed his attorney he intended to sell the house. Attorney Chapman had to bring an action to get the mortgage satisfied. During all of this time, numerous unsuccessful attempts were made to contact Respondent. In December, 1979, Respondent was retained by a cartel of Canadian corporations to oversee problems they had with some oil and gas interests in Kansas and Texas. He was offered a position as in-house counsel for a Texas corporation in early 1980. For a number of months, Respondent was in and out of South Carolina.

During this time, Mr. Bermingham also found it difficult to reach Respondent. He testified that in late 1980 or early 1981, Respondent told him another attorney would handle his case. Mr. Bermingham called the attorney designated by Respondent and was told that he did not have his file and would not handle his case. Mr. Bermingham felt that without his file and an attorney, he could not defend himself in the suit to foreclose on the mechanic's lien. He thereafter called Mr. Barnes' attorney and agreed to split the $4,117.57 held in escrow. Mr. Bermingham understood a separate suit would later be filed against Mr. Barnes for defective construction of the house. This suit was never filed.

With respect to the Bermingham matter, the Hearing Panel found, and the Executive Committee adopted, the following findings of fact:

1. Respondent neglected to render to the Berminghams appropriate accounts or receipts showing payment for repairs to the house.
2. Respondent neglected to defend his clients against the foreclosure petition or to make definitive arrangements with a competent lawyer to do so.
3. Respondent neglected to cause his clients' funds in the amount of $4,117.57 to be placed in a joint fiduciary account as provided at the closing of the sale of the house.
4. Respondent failed to promptly render to his clients appropriate accounts regarding their money which was placed in the two escrows.

## The Rivers Matter

Respondent represented Jack Fry in his purchase of realty owned by Pearl Rivers. The property had been mortgaged in the amount of $10,000.00 to her now deceased mother-in-law, Mrs. George Eleanor Rivers. Upon the sale to Fry, Frank Rivers (Pearl's husband) requested that Respondent hold in escrow the amount of $10,000.00. The reason for this request was that Rivers, as executor of his mother's estate, was seeking to void an assignment of the mortgage to his sister, Mrs. Hughes, just one month before their mother's death.

A Decree was filed in October 1980, declaring the assignment null and void, and directing Respondent to pay the $10,000.00 held in escrow. Rivers requested Respondent to hold the money because he thought his sister might appeal the decree and because he had known his own attorney only a short time and was concerned about the amount of attorney's fees which might be involved. Before Christmas, 1980, however, Rivers made several attempts to get the money. Mr. Rivers' attorney (Mr. Bell) also requested a number of times that Respondent send the money.

Finally, on May 22, 1981, attorney Bell filed a negligence/conversion action for Rivers against Respondent to recover the escrowed monies. About two weeks later attorney Bell received from Respondent a check dated May 22, 1981, payable to Rivers in the amount of $10,758.30. This check was deposited June 3, 1981.

Mr. Bell subsequently obtained a default judgment against Respondent for approximately $30,000.00 actual and punitive damages. An Execution against Respondent's Property issued

on July 22, 1981, but on the eve of the sale, the parties settled the judgment upon payment to Rivers of $5,000.00.

With respect to the Rivers matter, the Hearing Panel found, and the Executive Committee adopted, the following findings of fact:

1. Respondent served as an escrow agent with the approval of Rivers, and upon Mr. Rivers' request, Respondent failed to pay promptly the escrow account as directed by the Master's Decree and to secure a satisfaction of mortgage to clear the title of his client's land.
2. Respondent disregarded the Decree of the Master when, after learning an appeal had been dismissed, he failed to pay the $10,000.00 held by consent of his client and Mr. Rivers.

## Conclusions of Law

The Hearing Panel made, and the Executive Committee adopted, the following conclusions of law:

1. The Respondent has engaged in conduct that is prejudicial to the due administration of justice in violation of DR1-102(A)(5).
2. The Respondent has engaged in conduct that adversely reflects on his fitness to practice law in violation of DR1-102(A)(6).
3. The Respondent failed to act competently when he attempted to handle a legal matter, which he knew he was not competent to handle without making definite arrangements to associate with himself a competent lawyer in violation of DR6-101(A)(1).
4. The Respondent neglected legal matters entrusted to him in violation of DR6-101(A)(3).
5. The Respondent negligently disregarded a ruling of a tribunal in violation of DR7-106(A).
6. The Respondent failed to render appropriate accounts to his clients, in violation of DR9-102(A)(2).
7. The Respondent has violated the Disciplinary Rules set forth above, thus constituting a violation of DR1-102(A)(1).
8. The Respondent has engaged in conduct tending to pollute the administration of justice or to bring the courts and the legal profession into disrepute or demonstrating

unfitness to practice law, in violation of Section 5(d) of the Rule on Disciplinary Procedure of the Supreme Court of the State of South Carolina.

9. The Respondent has violated the Code of Professional Responsibility as set forth above, thus constituting a violation of Section 5(b) of the Rule on Disciplinary Procedure of the Supreme Court of South Carolina.

While much weight is given to the recommendations of both the Panel and the Executive Committee, the final authority, responsibility, and duty in disciplinary matters rests with this Court, *Burns v. Clayton,* 237 S. C. 316, 117 S. E. (2d) 300 (1960). It is inescapable that the Respondent has neglected to represent clients who entrusted business to him with utter disregard of their rights. More seriously, he has retained monies which belonged to his clients and belatedly returned them when he was sued. His explanation, made in oral argument, that he had these funds invested in Canada so as to procure a higher rate of interest is incredible. This Court is charged with the duty of determining those persons who shall be admitted to the practice of law. It is equally charged with the duty of removing from the practice those persons whose conduct is such that the public is no longer justified in relying upon them.

It is therefore ordered that Respondent be and he is hereby Disbarred from the practice of law in South Carolina, and that he, within five days, surrender to the Clerk of this Court his certificate issued by this Court admitting him to practice.

It is so ordered.

GREGORY, Justice (concurring and dissenting):

I concur with the findings of fact and conclusions of law determining professional misconduct but do not agree the sanction of disbarment is warranted. In my view the appropriate sanction is indefinite suspension from the practice of law.

HARWELL, J., concurs.